# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

COUMBA MAKALOU,

    Plaintiff,

    v.

ABCD & COMPANY, LLC,

    Defendant.

Civil Action No. 25-1470-TDC

## MEMORANDUM OPINION

Self-represented Plaintiff Coumba Makalou has filed this civil action against Defendant ABCD & Company, LLC ("ABCD") alleging employment discrimination on the basis of national origin and religion, a hostile work environment, and unlawful retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2000e-17. ABCD has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Upon review of the submitted materials, the Court finds that no hearing is necessary. D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED.

## BACKGROUND

The presently operative Second Amended Complaint sets forth the following relevant facts, which this Court accepts as true for purposes of resolving the Motion.

Plaintiff Coumba Makalou is an immigrant from Mali and a Christian who abstains from alcohol consumption for religious reasons. From May 22, 2023 to November 1, 2023, Makalou worked at ABCD. During this time period, Makalou's direct supervisor was Jared Wilson, and

ABCD's co-owners and managing partners were Corey Briscoe, Brittanye Briscoe, and Durecia Moorer.

## I.    Work Assignments

During her employment at ABCD, Makalou worked as a Senior Event Planner.  On June 24, 2023, approximately one month after she was hired, Wilson assigned Makalou to take the lead role in planning an "African Diaspora" event and explicitly told Makalou that she was assigned to work on that event "because you're African."  Second Am. Compl. ("SAC") at 5, ECF No. 23. There was no signed contract, budget, or confirmed venue for this event, and during a team meeting in mid-August 2023, Wilson described this assignment as "not a real event" and repeatedly referred to Makalou as "a guinea pig." *Id.* at 7.

Meanwhile, ABCD assigned other Event Planners to "prime, confirmed events." *Id.* at 5. Jennifer Prinzivalli, a white, non-immigrant Senior Event Planner, was assigned to lead a high-profile conference in New York within two months of her hiring; Shelley Renn, another white, non-immigrant Senior Event Planner hired after Makalou was assigned to lead at least two full-scale events within her first month of employment; and Tiesha Cole, an African American, non-immigrant Senior Event Planner was consistently assigned to lead revenue-generating events.

In June 2023, after Makalou independently generated a business opportunity with a vegan festival founded by an African American couple and completed a site visit plan, Wilson assigned that event to Cole, who then gave the presentation about the plan to the client.  In explaining this decision, Wilson stated that Cole was "a better fit" and more "in tune with the culture" of the event. *Id.* at 6.

## II.    Work Environment

Makalou asserts that during her tenure at ABCD, Wilson and Corey Briscoe repeatedly subjected her to ridicule based on her national origin. On three separate occasions between June and August 2023, Wilson asked Makalou to cook African food for executives because "all you African women can cook," despite Makalou's insistence that she does not cook. *Id.* at 7. Wilson and Corey Briscoe repeatedly mocked Makalou's French accent and formal English and laughed uncontrollably on one such occasion in July 2023. Corey Briscoe referred to Makalou as "United Nations" and advised another employee not to associate with Makalou because "no one liked United Nations." *Id.*

Makalou recounts other incidents in which she was singled out for differential treatment as compared to non-immigrant employees that she deemed to be harassing or humiliating. Sometime between August and October 2023, when Moorer believed that an employee was stealing eggs from the company kitchen, she repeatedly shouted, "There's a thief in this office!" and directly and aggressively questioned Makalou on multiple occasions whether she had stolen the eggs, while directly asking other employees only once or not at all. *Id.* at 8. Upon discovering that a white male operations manager had eaten the eggs, Moorer was not angry and joked with him about the incident. In or around September 2023, Corey Briscoe physically removed Makalou's eyeglasses from her face during a meeting and announced that they were "all scratched up" and "dirty," which prompted laughter from colleagues. *Id.* On another occasion, in October 2023, Moorer pointed out a price sticker on Makalou's shoe in a manner intended to cause embarrassment, while she routinely praised white, non-immigrant employees for their attire. On October 24, 2023, Moorer questioned Makalou about event materials that were missing and "became visibly angry" when Makalou truthfully stated that the materials were the responsibility of Wilson and Cole. *Id.* at 9.

3

Makalou alleges that she had explicitly and repeatedly informed Wilson that she did not drink alcohol due to her Christian faith, that she told Corey Briscoe the same thing, and that and her abstinence from alcohol was "universally understood" by the event team at ABCD. *Id.* at 11–12. Nevertheless, on October 11, 2023, after having previously warned Makalou that the company engaged in a "planned drinking ritual" at a company conference, Wilson pressured her to consume a shot of alcohol at that conference in violation of her religious beliefs. *Id.* at 12. When Makalou explicitly refused based on her Christian faith, Wilson moved toward her, held the glass to her lips, and instructed her to "Just drink it." *Id.* at 8.

### III.    Retaliation and Termination

On August 4, 2023, Makalou told ABCD's Human Resources Manager, Keisha Devine, that Wilson was "abusive." *Id.* at 10. On another occasion in August 2023, Makalou reported discriminatory treatment to Dozier, who instructed her to document the incidents but took no corrective action. On the same day that Makalou made that report, Corey Briscoe stated in front of other employees that "if anyone gets fired, it wouldn't be his mentee," Prinzivalli. *Id.* Then on August 21, 2023, Makalou received a negative performance review that included false criticisms.

In October 2023, after Wilson allegedly pressured Makalou to drink alcohol at the company event, Makalou again reported Wilson's behavior to Devine. According to Makalou, after these complaints, Wilson retaliated against her by scapegoating her for others' errors, denying her meal breaks at an October 25, 2023 conference while her colleagues were permitted to eat, and calling a client to state that he did not know Makalou's whereabouts during the same conference. Makalou also alleges that Moorer and Brittanye Briscoe, as well as Devine, participated in this retaliation at the October 25, 2023 conference by turning their backs on and walking away from Makalou while she was addressing them and a conference attendee.

Then, on November 1, 2023, Wilson terminated Makalou's employment at ABCD. In explaining the termination to Makalou, Wilson stated only that she was fired due to his "gut feeling" and unspecified complaints, which he refused to detail. *Id.* at 13. Wilson acknowledged that another non-immigrant Event Planner, Kayla Hicks, was not terminated despite several complaints about her, but he explained that decision by stating that Hicks "fit the culture" of ABCD. *Id.* at 14. Shortly after Makalou's termination, ABCD promoted Prinzivalli and Cole.

## IV.    Procedural History

On or about March 5, 2024, Makalou filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") in which she alleged discrimination based on national origin and religion, a hostile work environment, and retaliation. After the EEOC issued a Notice of Right to Sue, Makalou filed the original Complaint in this case on May 6, 2025. In the presently operative Second Amended Complaint, Makalou alleges the following violations of Title VII in the following numbered counts: (1) national origin discrimination; (2) religious discrimination; (3) a hostile work environment based on national origin and religion; and (4) retaliation.

On September 19, 2025, ABCD filed a Motion to Dismiss the Second Amended Complaint. Makalou filed a memorandum in opposition to the Motion on October 19, 2025, two weeks after the deadline set in the Court's briefing schedule. Upon review of Makalou's Motion for Extension of Time to Accept Late Filing, ECF No. 29, which was opposed, the Court will grant the requested extension and accept the brief.

## DISCUSSION

In the Motion to Dismiss, ABCD seeks dismissal of all counts pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Makalou has failed to state plausible claims for relief.

## I.    Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

## II.    National Origin and Religious Discrimination

In Counts 1 and 2, Makalou asserts that she was subjected to employment discrimination on the basis of national origin and religion. Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To state a Title VII discrimination claim, a plaintiff may demonstrate through direct or circumstantial evidence, as relevant here, that national origin or religion "motivated the employer's adverse employment decision." *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc). Alternatively, a plaintiff may proceed through the approach adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), "under which the employee, after

establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. To defeat a motion to dismiss, a plaintiff need not necessarily establish a *prima facie* case of discrimination, but "the complaint's factual allegations must allow a 'court to draw the reasonable inference that the defendant is liable'" for discrimination. *McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

To state a *prima facie* claim of discrimination, a plaintiff must present facts demonstrating: (1) membership in a protected class; (2) satisfactory job performance; (3) that the plaintiff was subjected to an adverse employment action; and (4) that similarly situated employees outside the protected class received more favorable treatment under similar circumstances. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). As ABCD acknowledges, Makalou is a member of a protected class based on her national origin and religion. However, ABCD asserts that Makalou has not adequately alleged the remaining elements of a discrimination claim.

As to the second factor, a "showing of satisfactory performance does not require the plaintiff to show that he was a perfect or model employee . . . only that he was qualified for the job and that he was meeting the employer's legitimate expectations." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). ABCD contends that Makalou has not met this standard because she received an overall performance review of a "C" in August 2023, and because the Complaint implies that Makalou did not complete a task that she alleges fell outside of her job description. Mot. Dismiss at 6, ECF No. 24-1. Yet Makalou's August 2023 performance review, attached to the Second Amended Complaint as evidence of retaliation in the form of an artificially negative evaluation, nevertheless described Makalou's performance as "solid," stated

that she had "passed the probationary period," noted that there was "[n]o action required" regarding her performance, and marked her as "eligible for benefits." Aug. 2023 Performance Review at 1, SAC Ex. C, ECF No. 23-3. Makalou also alleges that when she was terminated, Wilson "praised" her performance and stated that a conference "wouldn't have succeeded without her," and that the manager who escorted Makalou off the premises "confirmed there were no documented performance issues." SAC at 14. The Court therefore finds that Makalou has adequately alleged satisfactory job performance.

As to the third factor, an adverse employment action, Makalou alleges that ABCD gave her less desirable work assignments, denied her professional opportunities, and ultimately terminated her employment based on her national origin and her religious beliefs. Adverse employment actions include any action that results in a "'disadvantageous' change in an employment term or condition" in that it inflicts "some harm" with respect to an "identifiable term or condition" of employment, which may include a condition other than an "economic or tangible" one. *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024); *see also Herkert v. Bisignano*, 151 F.4th 157, 161, 165 n.4 (4th Cir. 2025) (remanding to assess whether a transfer of a supervisor to a position that was not supervisory and "offered less prestige, interest, and advancement" was an adverse employment action). A termination certainly qualifies as an adverse employment action. *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003). Moreover, where Makalou has asserted that because of her national origin, Wilson assigned her to the African diaspora event that had no confirmed contract, budget, or venue and that he described as "not a real event," SAC at 7, while also denying her the opportunity to work on other confirmed, high-profile, revenue-generating events including one that she was responsible for bringing to ABCD, Makalou has adequately identified actions taken against her that could reasonably be construed as disadvantageous to her

conditions of employment and thus harmful to her, including by impacting her opportunities for advancement. The third prong is therefore satisfied.

As for the fourth factor, Makalou has adequately pleaded facts supporting the conclusion that similarly situated employees of a different national origin received more favorable treatment under similar circumstances. ABCD argues that Makalou had "significant and important work assignments that had nothing to do with her African heritage," so it did not treat her less favorably based on her national origin. Mot. Dismiss at 7. Yet ABCD admits that it assigned Makalou to the allegedly disadvantageous African diaspora assignment because it "align[ed] with her own ethnicity and culture." *Id.* at 6. ABCD also provides no basis to dispute that the assignment of Cole, a non-immigrant African American, to the vegan festival arranged for by Makalou because Cole was a "better fit" and more "in tune with the culture," could constitute disparate treatment based on national origin. SAC at 6.

Further, Makalou has identified three specific non-immigrant Event Planners at ABCD who were assigned to lead "prime, confirmed" events including ones that were "high-profile," "full-scale," or "revenue-generating," while she worked on an event Wilson described as "not a real event." *Id.* at 5, 7. Notably, two of these similarly situated, non-immigrant Event Planners, Prinzivalli and Cole, were promoted shortly after Makalou was terminated. Makalou has therefore identified similarly situated comparators from outside her protected class who were arguably treated more favorably in relation to terms and conditions of employment. Finally, Makalou has also alleged specific facts supporting an inference of discriminatory animus, including that company leaders such as Wilson and Corey Briscoe mocked her accent, and that Corey Briscoe referred to her as "United Nations" and told another employee not to associate with her because

"no one likes United Nations." *Id.* at 7. Makalou has therefore alleged a plausible claim of national origin discrimination.

Makalou has also adequately pleaded a religious discrimination claim arising from her termination on November 1, 2023 after she refused to drink alcohol at a company event because of her religious belief requiring her to abstain from consuming alcohol. Where for purposes of Title VII, discrimination "because of" religion can be based on "all aspects of religious observance and practice, as well as belief," a termination because of this particular religious belief would state a valid claim. *See* 42 U.S.C. §§ 2000e-2(a), 2000e(j). Here, Makalou has alleged sufficient facts to support an inference that the termination was based on this belief. In addition to the close temporal proximity between the incident and the termination, Makalou has asserted that at the time of the termination, Wilson identified no performance problems and actually praised her performance, and that the manager who escorted her out of ABCD confirmed that she had no performance problems. Rather, Wilson explained the termination only by referencing a "gut feeling" and vague complaints, SAC at 13, while acknowledging that another employee had received complaints but was not terminated because she "fit the culture." *Id.* at 14. Where Makalou has alleged facts supporting the conclusion that there was no legitimate non-discriminatory reason for the termination, and that there may have been disparate treatment of a similarly situated comparator, she has stated a plausible religious discrimination claim.

ABCD nevertheless contends that Makalou has not established a religious discrimination claim because abstention from alcohol may not be a "widely known and accepted interpretation" of the Bible, and it is unclear when Wilson learned that Makalou abstained from alcohol due to her Christianity. However, Makalou has specifically alleged that she "explicitly and repeatedly informed Jared Wilson that she did not consume alcohol due to her Christian faith," *id.* at 11, that

prior to the October 11 incident, "Wilson himself had previously acknowledged Plaintiff's religious practice, cautioning her about the company's planned drinking ritual," *id.* at 12, and that during the incident, she specifically stated that she was refusing to drink "based on her Christian faith," yet Wilson continued to pressure her to drink. *Id.* at 8. Where Makalou has alleged that Wilson had actual notice of her religious belief relating to alcohol, it does not matter whether alcohol abstention is a widely known and accepted requirement of Christianity. *See Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 472 (4th Cir. 2025) (holding that a plaintiff sufficiently alleged a religious discrimination claim based on the denial of reasonable accommodations to employees with "less well-known or respected religious beliefs").

Finally, ABCD's reference to the same-actor inference does not alter the Court's conclusion as to both national origin and religious discrimination. "Under the same-actor inference, if the plaintiff's 'hirer and the firer are the same individual and the termination of employment occurs *within a relatively short time span* following the hiring, a strong inference exists that discrimination was not a determining factor.'" *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 653 (4th Cir. 2021) (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991)). However, this inference "loses its force when the plaintiff presents sufficiently compelling evidence of discrimination," and "is rebutted when the reason the employer gives for the adverse action is discriminatory on its face." *Adams v. Greenbrier Oldsmobile/GMC/Volkswagen, Inc.*, 172 F.3d 43, No. 97-1544, 1999 WL 34907, at *6 (4th Cir. Jan. 28, 1999) (unpublished); *Madel v. FCI Mktg., Inc.*, 116 F.3d 1247, 1253 (8th Cir. 1997) (declining to apply the same-actor inference when there were derogatory comments that provided evidence of overt discrimination).

Here, the Second Amended Complaint does not specify whether Wilson made the decision to hire Makalou, and Defendants make no such specific claim. Even if he had, in this case,

11

Makalou has asserted direct evidence of a discriminatory animus, including the mocking of her accent and calling her "United Nations" in a derogatory way, SAC at 7, and Wilson provided no articulable reason for Makalou's firing only three weeks after the incident relating to her religious belief. Moreover, in its brief, ABCD has acknowledged that its assignment of Makalou to a disadvantageous work assignment was facially discriminatory in that it was based on the fact that "you're African." *Id.* at 5; Mot. Dismiss at 6. For all of these reasons, the Court finds that Makalou has stated valid claims of national origin and religious discrimination in Counts 1 and 2.

## III.   Hostile Work Environment

ABCD also seeks dismissal of Makalou's claim in Count 3 of a hostile work environment based on national origin and religion. Under Title VII, a plaintiff asserting a discriminatory hostile work environment claim must allege facts that plausibly support inferences that (1) the plaintiff experienced unwelcome conduct; (2) the conduct was based on the plaintiff's race, color, national origin, religion, or sex; (3) the conduct was sufficiently severe or pervasive to create a hostile or abusive atmosphere; and (4) there is some basis for imputing liability on the employer. *See Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022). ABCD does not contest that Makalou has plausibly alleged unwelcome conduct based on her national origin and religion. ABCD does contest the remaining two requirements.

To show that conduct was sufficiently "severe or pervasive," a plaintiff "must show that she did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 421 (4th Cir. 2014) (quoting *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)). As to the subjective component of this test, Makalou has plausibly alleged that she perceived the environment to be abusive or hostile. As in *Freeman*, where the plaintiff's complaints of harassment, emotional distress, and resulting

depression and anxiety supported a finding that she subjectively perceived an abusive or hostile environment, Makalou has alleged that she complained about harassment by her direct supervisor and owners of the company, and that this harassment created severe emotional distress and a subsequent PTSD diagnosis. *See Freeman*, 750 F.3d at 421.

As for whether harassing conduct was objectively severe or pervasive, the Court must "examine the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Strothers v. City of Laurel*, 895 F.3d 317, 331 (4th Cir. 2018) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). "No single factor is dispositive, as the real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *EEOC Cent. Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009) (internal citations omitted).

Here, the Court finds that Makalou has adequately alleged conduct that was sufficiently severe or pervasive. Makalou alleges that her supervisor and multiple co-owners of ABCD repeatedly engaged in highly offensive actions, much of it directly linked to Makalou's national origin. This conduct included asking her to cook African food for executives because "all you African women can cook," calling her "United Nations" and advising other employees not to associate with her because "no one likes United Nations," and repeatedly mocking her French accent and formal English. *Cf. Laurent-Workman*, 54 F.4th at 212 (noting that where a coworker told the plaintiff that she "could not understand African Americans because they cannot speak properly," the statement "communicated racial enmity by summoning an odious trope about African American speech patterns"). It also included assigning Makalou to less valued events

because they related to her national origin and depriving her of the opportunity to work on an event that she brought into the company because she did not share the background of the client.

Wilson and the co-owners also engaged in other hostile and humiliating conduct directed at Makalou that, when considered with the overtly discriminatory conduct, can be deemed to be part of a hostile work environment based on national origin. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 317–18 (4th Cir. 2008) (finding that "in light of the extensive, explicitly religious harassment by the same coworkers," it was reasonable to infer that other acts of harassment that lacked a direct nexus were also motivated by religious discrimination). This harassment included the incidents when Corey Briscoe took the eyeglasses off of Makalou's face to ridicule her cleanliness; when Moorer falsely accused her of stealing eggs in a hostile manner only to make light of the incident when a white male employee proved to be the perpetrator; when Moorer questioned Makalou about missing event materials and became visibly angry when Makalou did not accept responsibility; when Moorer and Brittanye Briscoe turned their backs on Makalou and walked away when she was addressing them with a conference attendee; and when Wilson denied Makalou meal breaks at a conference while colleagues were permitted to eat.

Though no single incident was sufficiently severe on its own to establish a hostile work environment, the conduct was certainly pervasive. Moreover, the severity of the alleged harassment is heightened where it was perpetrated by Makalou's supervisor and the co-owners of the company, because "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character." *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) (stating that "[i]n measuring the severity of harassing conduct, the status of the harasser may be a significant factor" because a supervisor's conduct "impacts the work environment far more severely" than that of co-workers) (internal citations omitted). Thus,

viewing the allegations in the light most favorable to Makalou, the Court finds that the conduct was sufficiently pervasive and humiliating to state a plausible claim of a hostile work environment based on national origin. *See Laurent-Workman*, 54 F.4th at 207, 212 (vacating the dismissal of a hostile work environment claim where the plaintiff "endured a breadth of publicly humiliating comments" from a co-worker who received favorable treatment from the supervisor).

However, where the allegedly hostile conduct relating to religion is limited to the single incident in October 2023 in which Wilson sought to force Makalou to drink a shot of alcohol despite her religious objections, the Court does not find that the allegations are sufficient to support a hostile work environment claim based on religion.

The final element of a hostile environment claim, that the offensive conduct is imputable to the employer, can be established by a showing that the harasser was a supervisor. *See Strothers*, 895 F.3d at 333 ("If the harasser is a supervisor, then the employer may be either strictly or vicariously liable for the supervisor's actions."). For purposes of imputed liability under Title VII, a supervisor is an individual "empowered by the employer to take tangible employment actions against the victim," consisting of actions that effect "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 570 U.S. 421, 424, 431 (2013) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Makalou's hostile environment claim arises from conduct by ABCD's co-owners and Wilson, the supervisor directly responsible for Makalou's hiring, firing, and assignment of responsibilities. The Court therefore finds that the fourth requirement is met, and that Makalou has pleaded a plausible claim of a hostile work environment claim based on national origin.

## IV.   Retaliation

Finally, Makalou seeks dismissal of the retaliation claim in Count 4.  The Title VII provision relating to retaliation claims states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any . . . individual . . . because he has opposed any practice made an unlawful employment practice" under Title VII.  42 U.S.C. § 2000e-3(a).  To state a retaliation claim under Title VII, a plaintiff must allege facts supporting the conclusion that (1) the plaintiff engaged in a protected activity; (2) the employer took a materially adverse action against the plaintiff; and (3) "the protected activity was causally connected to the employer's adverse action."  *Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011) (citation omitted).  Here, ABCD does not seriously dispute that Makalou engaged in protected activity when on October 22, 2023, she reported the October 11, 2023 "religious coercion" incident relating to alcohol to the Human Resources Manager, SAC at 18, and her termination on November 1, 2023 necessarily constituted a materially adverse action.

ABCD thus contends that Makalou has not alleged sufficient facts to show that her termination was causally connected to her protected activity.  Causation for a retaliation claim may be shown through "the existence of facts that suggest that the adverse action occurred because of the protected activity."  *Laurent-Workman,* 54 F.4th at 218 (quoting *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021)).  At the motion-to-dismiss stage, causation can be inferred based on the temporal proximity between the protected activity and the materially adverse action, particularly when the materially adverse action occurs within two months after the protected activity.  *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025).  "However, even in the absence of temporal proximity, causation can be established through a pervasive sequence of intervening events indicating disdain for or intermeddling with the protected activity."  *Id.*

Here, Makalou's termination occurred less than two weeks after she complained to Human Resources that Wilson had pressured her to drink alcohol despite his knowledge of her abstention based on sincerely held religious beliefs. At this stage in the litigation, causation can be inferred from the short time period between the complaint of religious discrimination and the termination of her employment. *See Barnhill*, 138 F.4th at 132 (stating that while there is no bright-line rule, in an absence of other evidence of causation, a time period of "no longer than two months" can be sufficient to establish causation).

Makalou has also alleged that after she reported discriminatory treatment based on national origin to Dozier in August 2023, she faced a pervasive sequence of hostile events that culminated in the termination of her employment on November 1, 2023. On the same day that Makalou complained of national origin discrimination to Dozier, Briscoe apparently demonstrated his knowledge of the complaint by stating in front of other employees that "if anyone gets fired, it wouldn't be his mentee." SAC at 10. Beyond the fact that this protected activity also occurred within approximately two months of Makalou's termination, Makalou has further alleged that after her complaint, Wilson gave her a negative performance review with false criticism, scapegoated Makalou for other employees' errors, denied her meal breaks at the October 25, 2023 conference while other employees were permitted to eat, and called a client to state that he did not know Makalou's whereabouts at the conference. These additional events occurring between the time of the August 2023 complaint and Makalou's November 1, 2023 termination bolster the conclusion that Makalou has sufficiently alleged a causal link between her protected activity and her termination. *See Lettieri v. Equant Inc.*, 478 F.3d 640, 651 (4th Cir. 2007) (finding that intervening events between the protected activity and the plaintiff's termination could reasonably be viewed as exhibiting retaliatory animus and thus support the finding of a causal link as required to

demonstrate retaliation).  Because Makalou has stated a viable retaliation claim, the Motion will be denied as to Count 4.

**CONCLUSION**

For the foregoing reasons, ABCD's Motion to Dismiss will be DENIED.  A separate Order shall issue.

Date:  March 6, 2026

THEODORE D. CHUANG
United States District Judge

18